The next case is number 221317, Massachusetts Laborers' Health and Welfare Fund et al. v. Blue Cross Blue Shield of Massachusetts. At this time would Mr. Hufford please introduce himself on the record to begin. Good morning, Your Honor. I'm Brian Hufford from Zuckerman Spader on behalf of the Appellants' Mass Laborers' Health and Welfare Fund and its trustees. I would like to try to reserve four minutes for rebuttal. Three minutes. Okay. The central issue in this case is whether Blue Cross Blue Shield of Massachusetts as the third party administrator is a functional fiduciary under ERISA's fiduciary definition because Blue Cross exercised any discretionary authority over plan management or any authority at all over the disposition of plan assets. I'm sharing my argument today with Sarah Karchunas from the Department of Labor. It's my understanding that she will be concentrating on the plan asset prong of the fiduciary test. My focus will therefore be on the discretionary authority that was exercised by Blue Cross. We start with the Administrative Service Agreement, the contract in which Mass Laborers delegated discretionary authority to Blue Cross. As the TPA, Blue Cross offered a provider network to the fund and many of its clients to allow them to take advantage of negotiated discounted rates with providers. But we are not challenging those contracts nor are we alleging that Blue Cross was a fiduciary for role in processing each claim that comes in for benefits and determining the allowed amount that would be paid by the fund. Isn't this something that moving forward or had it happened in this case, you know, generating more specific contracts and then this would not be an issue. Is there an issue here the contracts have been ambiguity or it's a little vague and it didn't think about the issues now happening. Is it a standard contract what's happening? Well, in terms of the Administrative Service Agreement, Your Honor? Yes. I think that's pretty standard agreement and what it basically says is that Blue Cross is going to be providing a network and that we understand that and they're going to negotiate those contracts. But it also delegates to Blue Cross the decision making of processing the claims and determining the allowed amounts. And that's pretty standard. May I follow up on Judge Helby's question? Sure. So you argue that the district judge erred by dismissing the case. But it seems to me that because the case turns on the contract that Blue Cross Blue Shield actually provided a copy of that these really are issues of law about whether the contract confers the discretionary authority as to the precise matters that you're complaining about and whether the contract gives any control over or disposition of the plan assets. So in that sense it's a little bit unusual for a motion to dismiss because the issues are purely legal. And Judge Saylor certainly viewed them that way. Are we all agreed on that? Well, I mean, yes, Your Honor. I mean, our view is that the question is wasn't that did the ASA and the agreement that Blue Cross entered into, did that delegate discretionary authority to Blue Cross? Now, we would argue that if you apply the plausibility test that we certainly have alleged it's plausible and it's reasonable to interpret that that in fact Blue Cross had discretion. When you look at the claims, what the issue is... I'm sorry, but that seems a little contrary to ERISA. But let's go back to the contract and the precise clauses that you say gave discretionary authority. Well, if you look, for example, at AOA 052, which is the page in the appendix for the ASA agreement, it specifically identifies, among other provisions, what Blue Cross is doing. When a new claim comes in, the claim goes to Blue Cross for processing and determining the allowed amount. It does so by applying its own policies. First, it applies medical necessity criteria, which are Blue Cross's criteria, to determine whether the claim... terms that you say are involved in the dispute in this case, which provide discretionary authority. Well, under the ASA agreement, the critical issue is it says that Blue Cross is the one applying its policies to price the claims and determine what is the allowed amount. So the provision, again, specifically says in the ASA that Blue Cross will be applying medical necessity criteria, its own criteria, for determining what is or is not medically necessary. It also specifies it will be applying its own medical policy criteria, such as billing and coding practices or whether one claim should be bundled with another for making the claim, and then it prices the claim. All of those are delegated to Blue Cross. And what's critical is it's the only one who has access to those and, in fact, requires Blue Cross to comply with it. One of the important provisions of the plan, the SPD, it defines eligible charges as the negotiated rates. Excuse me, but I understood that we look at the contract and not the SPD. Well, in fact, Your Honor, the SPD has been incorporated into the contract. Blue Cross, the ASA, delegated to Blue Cross the ability to process the claims and determine the allowed amount, and in doing so, it also incorporated the SPD, it incorporated the plan terms, and it requires Blue Cross to comply with those plan terms. And what that's critical is one of the plan terms specifically says that billed charges that will be considered covered expenses will never be more than the negotiated rates. Blue Cross is the only party that can make that determination. It's the only party that can comply with that plan term because it's the only party to have access to the contracts. It refuses to give mass laborers access to the contracts. It also refuses to give mass laborers access to the medical policy criteria that Blue Cross is using to determine what is going to be the allowed amount. And I think that's the most critical factor. I'm sorry. Okay. I'm having trouble moving from a breach of contract claim to why these allegations amount to making them fiduciaries. According to some of the briefs, normally if you're going to make a TPA a fiduciary, you have a special rider to these policies. You've just told Judge Helby that this is a pretty standard policy, but there is no such rider, and such riders require negotiation of That's obviously not happening here. Well, Your Honor, I don't agree with that assessment because what we're looking at here is a functional fiduciary. Whether or not it's specified in the agreement, the question is are you functioning as a fiduciary? The Department of Labor made clear in its brief, for example, that a contract that confers discretionary authority can establish fiduciary status, and that's from the Minniette case and the Roseau case in the Eighth Circuit. And that's what we're arguing here, is that the contract is what established the fiduciary duties. And it's also, I think it's important to recognize that the ASA actually refers specifically to ERISA and the fiduciary definition. At the docket, at page 4. Yes, and it says the fund and the trustees, the plan is an ERISA plan. It says the trustees are fiduciaries. And then it says both parties recognize that the definition of fiduciary as it exists under ERISA is the definition of fiduciary. I don't read that as a concession by anybody that anyone other than the named fiduciaries are in fact fiduciaries. I think the issue is you do not have to be the named fiduciary, because it comes down to whether you're a functional fiduciary. Yes, we all agree on that. So, again, what is it? You seem to be saying that you contracted with Blue Cross Blue Shield Massachusetts in order to take advantage of their PPO networked discounted pricing. And, okay, so you have a contract to do that, and if they violate the contract, you have a suit. But what makes them a functional fiduciary? The issue is precisely because when they're deciding what is going to be the allowed amount, which is really what the plan is all about, is establishing paying claims on behalf of the union members, that decision is primarily being made by Blue Cross. It's evaluating individual claims and deciding what is going to be paid for that claim, what's medically necessary, the length of stays, et cetera, and so that's the discretion. It's evaluating each individual claim and deciding what is going to be priced, and the plan has no say over that matter. That's solely been the discretion of Blue Cross for each individual claim. What does the plan have say over, because I understand this argument to be inconsistent with the argument made by Blue Cross Blue Shield, which is that it is the plan that has to approve eligibility and payment of claims. The issue here is that there's a split level of authority, and I agree with that. What the plan decides is, are you eligible, are you somebody in the union that is subject to this plan, and does the plan cover this, meaning, for example, if the injury occurred during work, that would be worker's comp, it's not under the plan. So they decide, is it under the plan? Once they decide that, the decision about what benefits are being paid under the plan and how much is exclusively the jurisdiction of Blue Cross, and Mass Laborers does not have the ability to change that or second guess the pricing, second guess how much should be paid or what's medically necessary. That has all been delegated to Blue Cross, and that's the key part of the plan is how much benefits to be paid, and Blue Cross has the entire discretion for making that decision, not Mass Laborers, Your Honor. I thought that under the Department of Labor regs, that sort of perhaps discretionary, but it's administrative determination was defined, and there's case law not to be the definition of a fiduciary. I thought the regs were pretty explicit that the carrying out of such administrative tasks did not make someone a fiduciary. No, Your Honor, what that holding was, and what the Department of Labor says with its own advice it's previously issued, is if the TPA... No, no, no, I'm not interested in their litigating position, I'm not interested in advisory opinions, I'm interested in regulations. What the regulations specify is that if you are following the advice of somebody else, if the plan is setting the policies and procedures, and is merely being applied, such as if I ask a bank to pay my bill, and I tell the bank here's how much, from what account to what vendor, that's not discretionary, and you're not a fiduciary, but this is different, because here what the regulations say, if the TPA is making the decision based on its own policies, not those of the fund, that's what makes it a fiduciary, and that's exactly what applies here, because all the decisions of the allowed amount, how much is going to be paid, the medical necessity criteria, the billing criteria, are all Blue Crosses, and critically, they do not disclose that to the plan. The plan would have no ability to make those decisions, because it's all controlled by Blue Cross, and that's where the discretionary applies. But the contract could be, moving forward, written in a way that the plan does control everything, or provides more details, correct? If the contract allowed Blue Cross to get access to those documents, and gave them the ability to make the final decision, then that would be different. And that could be done once this contract is over, in another contract, or that could be done? Absolutely, but it's not done here. Okay, so let's hear then, any other questions from my colleagues? If not, you still have... Yes, I have another one. So, it's quite clear, everyone agrees. The screen seems to have frozen on me. Okay. We can see you. Thank you. So, everyone agrees you have a breach of contract claim. Are you saying, we are to provide you with the information you just recounted, is a breach of contract? Our primary claim is it's a breach of fiduciary duty. We allege the breach of contract, really as an alternative to state law claims. Would you answer my question? I apologize, it actually blocked off part of it. You cut off for a second, could you repeat the question? Okay, you say Blue Cross did not provide us with certain information. Would have been helpful to us to monitor them. I understood that everybody agrees that you have a breach of contract claim. Are you saying that failure to provide information is a breach of contract? Forget the fiduciary part right now. I think it is, but it's somewhat of an open issue. I think Blue Cross would argue that there's limits on what it has to produce. It claims that under the ASA, it does not have to give that information. That's one of the reasons why it's so important to be able to use ERISA, because it's imposing the fiduciary duties that goes beyond what's in the ASA. Okay, thank you. I'm grappling with why the confidentiality of the information which was known to both parties at the time they entered into this agreement, why wouldn't that simply be part of the benefit of the bargain? Why wouldn't that have been priced into the fees that they charged? The issue here, and I agree, this is negotiated between the trustees and Blue Cross, but the argument is by negotiating it that way and giving the authority to Blue Cross to control that information, that's what makes them a fiduciary, because it gave them authority. The Blue Cross is unable, the trustees are unable to do it. If it knowingly gave them the authority to set price and not disclose their confidential information, why wasn't that part of the benefit of the bargain, negotiating bargain? Well, it was part of the agreement. I agree, Your Honor, but that's separate and apart from the issue of, as we're saying, that bargain made Blue Cross a fiduciary. And our argument now is that there's many red flags that were identified when Claims Informatics looked at this information to show that Blue Cross was causing the plan to overpay by millions of dollars and that they were breaching their duties to the plan by causing them to overpay. And so when Blue Cross, when the trustees in exercising their own fiduciary duties went to Blue Cross and said, we want to understand because we think you're overpaying, Blue Cross said, we have control of it. We're not telling you anything. We are deciding. Now, that may say it's part of the contract, but that's precisely what made them a fiduciary, because they are the ones who are making the decisions and they control those decisions. Regardless of whether it's in the contract, that doesn't change the fact that that really proves, in a sense, that Blue Cross is a fiduciary, because they're the ones who are exercising the discretion and they control all the information. Okay. Thank you, Counsel. Let's hear then from the Department of Labor. Please identify yourself. Good morning. My name is Sarah Karchunas on behalf of the Secretary of Labor as amicus supporting appellant, Massachusetts Laborers' Health and Welfare Fund. Okay. And, Counsel, before your five minutes start running, I do have a question, so I'll pose it now so I don't take your time away. But I'm very curious. I have the amicus brief filed by the law professors, which I'm sure you've read, and there's a very interesting argument regarding that. And I'll read it. The agreement is replete with terms that are incompatible to fund having an equitable property interest in the working capital amounts. And the amicus also mentions that these are separately maintained. Trust beneficiaries have equitable ownership interest in separately maintained trust property, and that's not the case here. So at some point in your argument, if you want to address that, I think it would be good to hear from DOL regarding that other amicus, which obviously does not coincide with yours. So please go ahead. Yes, absolutely, Your Honor. May it please the Court, the District Court erred in granting Blue Cross's motion to dismiss for two reasons. First, the District Court erred in finding that Blue Cross did not exercise any authority or control over plan assets, specifically by rejecting the Sixth Circuit's plan asset analysis and HILACs, and finding that the working capital amounts deposited by the fund into a Blue Cross account expressly for the payment of benefits were not plan assets. Second, the Court erred in determining that Blue Cross's pricing determinations were merely ministerial acts constrained by contract and not fiduciary acts. On the first point, assets of an employee benefit plan are to be identified on the basis of ordinary notions of property rights. Applying ordinary notions of property rights, the assets of a plan include any property in which the plan has a beneficial ownership interest. While Blue Cross argued that the Department of Labor set forth a three-part test in an advisory opinion, allegedly showing that the separation of funds is necessary, it removed the crucial phrase before the quote stating that the quoted language was an example of a situation in which a plan could have a beneficial ownership interest. Blue Cross later pointed out that that advisory opinion stated that the creation of a separate account in itself is not sufficient to show plan asset status, and this is true precisely because the test is not based on whether or not the formalistic hallmarks of a trust are in place, but whether practically. Counsel, if I may interject at this point. So the Department of Labor does have some regulations about discretionary authority and whether that makes someone a fiduciary. The department, though, as I understand it, has not attempted to define plan assets by regulation. It's true you have these advisory opinions. It's pretty clear from the statute and, indeed, your own regulations, that we look to traditional definitions of trust law and that we look to the restatement. And the law professor's amicus briefs, and one of them, after all, wrote the textbook which is commonly used to teach ERISA law in law advisory board. They say this doesn't meet any of the classic criteria under trust law or under the restatement. So you now say, well, it isn't a per se rule that you have to segregate assets. It may not be a per se rule, but when the district court looked at all of the various arrangements in the agreement as to the working capital, it concluded that these were not, in fact, plan assets. And so what is it? You argue that the fact that the funds were earmarked as though that colloquial term for use of payment of the benefits, but the law doesn't allow colloquial terms in this area. The restatement is very clear about what is earmarking and what is not. So under the restatement, how are these funds earmarked? Your Honor, the Sixth Circuit, I have to tell you, the Sixth Circuit adopted the colloquial definition of earmarking. I think that that's wrong. I also think the Sixth Circuit was wrong when it said, oh, you looked at the summary plan description and the beneficiaries here might have thought that Blue Cross Blue Shield controlled the plan assets for their benefit and that common man approach. I'm sorry, I just don't think it flies under ERISA. And I share similar concerns. I know your time is up, but let me give you three more minutes to respond to this. This was a lengthy question, so we'd like to hear from you on that. Yes, Your Honor. I think to start, I'd begin by saying that while trust law does inform ERISA, on the question of what is a plan asset, we look to beneficial ownership interest, which isn't exactly aligned with whether or not a formal trust is in place. And one reason for that is that it just wouldn't serve the purposes of ERISA to have such formal legalistic structures on what's a plan asset. Why not? The law professors say, yes, in trust law and under the restatement, there can, in fact, be beneficial interest. But nothing about this contract amounts to that. Your Honor, the reason why this would not serve the purposes of ERISA is that the purpose of ERISA is to protect plan assets. And at its base, these are assets that the plan has that it wants to spend on plan benefits. In this case, this is a self-funded plan, and so the plan itself is paying for the benefits with its own money. And just by moving those benefits and handing them to a TPA like Blue Cross and saying these are for the payment of benefits, the fact that they're not. This is not a broad argument. Are you saying when it's a self-funded plan, any TPA agreement that allows for arrangements for ascertaining of precise benefits, by definition it then becomes plan assets? No, not at all. And what are the limits to that argument? The limits, Your Honor, are that the pot of money being used here is for benefits, and that's where the beneficial interest comes into play. These are funds that are directly. Isn't that true of every self-funded plan that hires a TPA? It is, but the TPA might not hold those plan assets in a situation where the TPA would pay the bills sent in by the providers and then later bill the plan. They would never touch the plan assets. The plan assets would still be plan assets, but they'd remain in the hands of the fund in this case. Oh, so under your view, a TPA would be limited to what, making a determination and telling the fund, here's the amount you pay, rather than? Not necessarily, Your Honor. Okay, sorry. I'm just not following. That's okay. It would be based on whether or not the funds actually get transferred to the TPA. And so in this case, the TPA, Blue Cross, is actually holding the funds and then also on top of that exercising authority and control over the funds by making pricing determinations unilaterally. But in terms of whether or not they're— They're co-mingling these funds. There's no requirement they hold them separately. There's no requirement that they hold them in trust. Yes, Your Honor. However, three cores, not just HILEX, but also the Fourth Circuit and the Tenth Circuit, have also found that this earmarking, and I think a better, more precise term would be designating funds, designating funds for plan benefits, that that constitutes the benefits that constitute plan assets. So it's not so much a wider theory, but it's concretely been held by three courts of appeals. But that would be— Go ahead. Even though the funds aren't held separately, there's certainly accounting of what the use made of the funds. So in that sense, it's clear that we know what funds go towards what beneficiaries. Yes, absolutely, Your Honor. There's multiple indicators in this case showing in the ASA why these funds were— why the plan has a—the fund has a beneficial interest in these funds. One being that the ASA clearly states they're meant for estimated claim payments and then refers to the claim payments that Blue Cross makes as the funds claim payments. Another point being, exactly as Your Honor stated, that Blue Cross is not able to use these funds however it may like. It's told exactly how to use them and then procedures are put into place to make sure that the funds are, in fact, being used for the payment of benefits. And then on top of that, any additional funds that are left over at the end of the month are credited back to the fund that have not been used for plan benefits. The most opaque part of this process for me, which demonstrates some level of discretion, is what claims—what overpayments to go after. Could you address that? Your Honor, on the issue of the overpayments and settlements, the Secretary has not briefed it and we don't have a position. Surely our analysis of what's a plan asset and the general theories of law we put forth would apply to this, but we do not have a position on that. Okay. Okay, Counselor, if you want to close, if there's any other questions, if not, you have like a minute to close if you have any other thoughts, Your Honor. Sure. Thank you, Your Honor. I would just say that the formalities that we've been talking about, the requirement or the argument that a separate account is required are not and have never been required for a plan to have beneficial ownership interest in the assets. There's no Court of Appeals that has held that separation of funds is required. And additionally, Blue Cross's argument that separation of funds is required will lead to nonsensical and somewhat harmful conclusions. Under this logic, even in a situation where two parties agree that the fiduciary will hold assets in trust, they've agreed to that, they both agree that they're plan assets, theoretically then the fiduciary could take the plan assets and turn them into non-plan assets, thereby potentially avoiding fiduciary liability merely by making this decision to deposit them into a commingled account. Affirming the court's erroneous plan asset analysis would not only go against the plain language of the ASA, but also the established standard of asking whether or not a plan has a beneficial, not illegal or formal interest in plan assets. What is the Department of Labor position on looking to the subjective expectations of plan beneficiaries to determine whether there is a beneficial interest? Your Honor, that idea is, in our advisory opinion, that looking at what the plan itself says that we can look to that. However, in this case, we don't even need to look to that and we don't necessarily look to that because we can look at the ASANC in sort of the clear terms of the contract, why the money is there. Okay, so to the extent the Sixth Circuit used such a standard, the Department of Labor is not necessarily endorsing that. The Department of Labor would definitely endorse using that standard as it's found in our advisory opinions. Just in this case, we didn't apply it or rely on it because we had such strong language in the ASA. Okay, thank you. Okay, thank you, Counsel. Thank you. Okay, let's hear now from Counsel for Blue Cross Blue Shield of Massachusetts, Mr. Miller. And please identify yourself when you start. Good morning, Your Honors, and may it please the Court. Evan Miller for Apelli Blue Cross. Okay, and let me ask you, I was referring to the amicus brief by the law professors. You're in agreement with their arguments, or do you have anything you want to add or react to that? Yes, we are in full agreement with their arguments. And indeed, as pointed out by Professors O'Brien and Medill in their persuasive amicus brief, none of the factors that the common law of trust recognizes to demonstrate beneficial ownership shows that the fund here had an ownership interest in the working capital amounts. In connection with the earmarking issue, we are in complete agreement with Judge Lynch that the Labor Department's characterization of earmarking was merely a colloquial. And again, as persuasively pointed out by Professors O'Brien and Medill in their brief, the concept of earmarking is well recognized in the common law of trust. There is a doctrine of earmarking in the common law of trust, and that doctrine makes clear that in order for property to be deemed to be earmarked, it needs to be separated and segregated. And in this case, the working capital amounts were not segregated and separated. Our position is that the working capital amounts were not planned assets. Judge Thompson, I did want to address the issue of overpayments and settlements that you had raised with the Labor Department, and particularly whether in connection with engaging in settlements, Blue Cross would be deemed to be exercising discretionary authority. Our judgment is that even if there is some exercise of discretion in connection with settlements or overpayments, it is not in connection with plan management. And under the exercise of discretion functional test, the exercise has to be in connection with plan management. And that's because when Blue Cross undertakes settlements... What about planned assets? I'm sorry? What about planned assets? Well, in connection with settlement amounts and the overpayments and whether they are planned assets, the operative complaint does not allege that Blue Cross exercises control over the overpayments. There's no assertion that Blue Cross converted or otherwise rendered unto itself overpayment amounts. The complaint's point with respect to overpayments and settlements is that Blue Cross didn't pursue them, or the allegation is Blue Cross settled on the cheap. And that resulted in the fund obtaining less money. That's not custody over planned assets. And the operative complaint does not, in connection with the overpayments themselves, make an allegation that there has been an exercise of control over planned assets. It is also our view that working capital amounts were not planned assets under the established law of this circuit, and indeed that this case, in connection with the planned assets issue, is functionally indistinguishable from this circuit's reasoning and decision in In Re Fidelity float litigation, a case that notably neither the fund nor the Labor Department even addressed in their briefs. In that case, Fidelity, ATPA and trustee, received monies which it actually did segregate in separate accounts, and the plan there ordered Fidelity to pay those monies to planned participants in the form of benefits. And the court held that such traveling cash were not planned assets, and as a consequence, Fidelity, as the agent with custody over that cash, was not a fiduciary. Here, Blue Cross received cash advances in the form of upfront reimbursements. It was not required to segregate or separate the cash. It could use the cash any way it wanted, as long as it paid similar amounts to providers. So we believe that a fortiori Fidelity float dictates that result, that the working capital amounts were not planned assets. HILACs should not govern here. Let me ask you, counsel, if the contract were to be written in a separate, same question I asked opposing counsel in a different manner, or going prospectively, the result could be different from what you argued, but here we're dealing with the agreement itself the way it's written, correct? Yes, that is absolutely correct. And indeed, going back to a question that Judge Lynch had of fund counsel, we agree that these are legal issues, and that the interpretation of the relevant services contract here is a legal issue. And these are standard agreements, usually, that are signed, correct? That is correct. If we were to affirm, I guess, prospectively, when these agreements are negotiated, take into account the opinion of Judge Taylor's decision stands, and parties will negotiate differently if they want this to fall within ERISA or whatever. That's potentially correct. But these are standard agreements. The contracting parties, obviously, like in any contract negotiation, have different leverage. But these are standard form contracts, including in connection with the issue that came up earlier about disclosures. And it would be our view that any assertion that disclosures were not made by Blue Cross would also be a contract claim, and that the contract determines the scope of the disclosures that Blue Cross needs to make. I now want to turn to the prong that deals with discretionary... Let me also ask you, you mentioned if this were just a contract issue, this would have to go to state court, because I believe it's not a federal issue then, and there would probably be no diversity, right? I believe that that would be correct. It depends who the plaintiffs are and the diversity analysis. Yeah, but in this particular case, absent the ERISA claim, this would have ended up in state court as a contract claim. It probably would, yes. Okay, thank you. In connection with the discretionary exercise by Blue Cross over plan management, it is our position that it did not do so. First, the funds complaint does not even allege an exercise of discretion. All of the alleged errors are purported mistakes by Blue Cross in failing to follow provider payment policies and guidelines. The theory of the operative complaint is that there is a right answer in pricing a provider's claim, not a potential set of correct answers, and the allegation is that Blue Cross here failed to get the right answer. That's not an exercise of discretion. Second, even if the complaint could be read to allege an exercise of discretion, Blue Cross did not have the final authority to approve or deny the claims. That power lay exclusively with the fund. It is the fund under this standard contract that directs Blue Cross to pay the claims and any claim. Courts have made clear that a TPA that does not have the final authority to approve claims is not acting as a fiduciary. See our brief at page 24 for the discussion of those cases. Third answer, that was the question that I asked your opponent. I reminded him that you had argued that the fund kept final authority, and he replied, oh, no, all we did was approve the general eligibility of a particular union member. We didn't do anything after that. Could you be a bit more specific about this final authority provision? Yes, Your Honor. It's at A49, and it's under the heading of processing of claims. It states, I'll just read it into the record, following the fund's adjudication, the final approval or denial will be forwarded by the fund to Blue Cross and Blue Shield. The fund indeed does have or did have the final authority here. On that point, so I understood their argument to be that, for instance, if Blue Cross made a decision that certain treatment was not appropriate, that that would be your decision. Or are you saying that you would make such a recommendation to the fund and that they could override a decision as to whether to pay a claim that you didn't think constituted feasible treatment? Well, the operative complaint does not allege that Blue Cross was engaging in these kinds of medical necessity and medical treatment decisions as a matter of eligibility. The operative complaint does not allege that. Now, it may be the case in applying the provider contracts and provider policy guidelines that Blue Cross makes a determination consistent with those guidelines on medical necessity. But as it relates to medical necessity determinations in the context of claims processing or eligibility, that's not alleged in this complaint. But I do want to pick up on that thread a little bit more, Judge Thompson, for the following reason. The fund counsel indicated that there was a split level of authority here with the fund having the authority to approve eligibility and Blue Cross determining the amount and repricing of provider claims. We think that there is a split level of authority, but that the function that Blue Cross performed was outside of ERISA benefit claim processing, as all the courts have defined that term. And we think that this difference between what the fund did here, which was determine eligibility, determine if the plan would cover the benefit, how much the plan would pay or the fund would pay, and what the beneficiary's responsibility was, all functions here performed by the fund, that's claims processing. What Blue Cross did was reprice claims prior to the fund engaging in claims processing and claims adjudication. So we disagree vehemently that the contract delegated to Blue Cross claims processing did not, as the courts have defined that in ERISA, and it's that function that is plan management. And it is our view that this difference between the prefatory conduct that Blue Cross engages in, in repricing a claim, so that the fund could then engage in the fiduciary conduct of claims processing, is entirely consistent with the reasoning of the Supreme Court in Pegram v. Herdrick. That kind of line drawing is exactly Justice Souter's analysis, that plans and claim adjudication of plans is all about determining the relationship between the plan, the promised program of benefits and the beneficiary, and things like, in the case of Pegram, medical treatment decisions, which there did in fact affect eligibility were outside of what Congress intended the fiduciary duties to be. So in sum, I want to say the following. The central role of TPAs like Blue Cross is to negotiate and implement special pricing arrangements with providers. And they do so by leveraging their customer base to obtain volume discounts, taking the interest of all customers into account. Taking the interest of all customers into account in operating a provider network is fundamentally incapable, incompatible, with being an ERISA fiduciary, because that would require a duty to act exclusively in the interest of each benefit plan customer. And economies of scale would be lost, and at the least it's going to result in higher health plan costs and expensive fiduciary riders. The best way to deal with the allegations in this complaint is to proceed under contract law and not to expand the ERISA's fiduciary rules beyond their recognized province of processing plan claims, which here was an activity undertaken exclusively by the fund. Chief Judge Saylor's thoughtful and well-reasoned opinion should therefore be affirmed. Thank you very much, counsel. Mr. Hufford, you have three minutes reserved for rebuttal. Please go ahead. Thank you, Your Honors. I think the critical issue here is this case, as we are seeking to pursue it, is not expanding ERISA or expanding fiduciary duties, but rather we are simply applying the fiduciary standards as defined under the statute itself. The issue here is what is the purpose of the fund? The fund basically takes money from union members and the employers, and it basically is supposed to use those funds to pay for medical health care. So it takes those funds. It sends them to Blue Cross. Blue Cross then uses that to price the claims and determine what is covered and what is not covered. Now, excuse me, how much to pay in benefits. It makes medical necessity decisions. It makes concurrent review decisions. And it decides how much to pay in benefits. The critical issue here is in deciding that, you have to look at the contracts and apply them to unique factors. You also have to apply medical necessity criteria. You have to apply billing and coding criteria, all of which are done by Blue Cross based on its own policies and procedures. The fund has no ability to oversee that because they don't have access to that information. And indeed, the ASA specifically says that the fund's decisions and what it's doing with eligibility and making sure the plan covers it is all subject to Blue Cross's pricing. I think that's the critical issue here, is that Blue Cross is clearly exercising discretion in evaluating each individual claim and making the decision of how much should be paid for those benefits. All mass laborers does is ensures that it generally falls under the plan and it actually determines the copay and deductibles and what share of that allowed amount should be paid by the patients. But the actual repricing, which is identifying what is the benefit to be paid by the plan, that is exclusively under the control of Blue Cross. Now, I think one factor here that's important to recognize is when you look at the question of possibility standard. In the NR versus Raytheon case, the court basically said that the district court there had agreed with the defendant's representations of how the plan works. And it said that was premature on a motion to dismiss. In this case, there's a disagreement of whether the ASA and the plan give discretion, whether Blue Cross in fact engages in that discretion. Well, in effect, to dismiss this case, you're simply characterizing and agreeing to accept how Blue Cross wants to characterize that contract and its role. But it's premature to do that in this situation. Because Blue Cross, we've certainly plausibly alleged that Blue Cross has engaged in discretionary conduct. Now, I want to turn a little bit quickly to the overpayment issue. It's up to Blue Cross to determine whether there is an overpayment, whether to settle the case, whether to take money back or not, and whether to collect the fees. As Hynek's case, as well as several other cases, including the Pinefitter's case in the Sixth Circuit and the Peters case in the Fourth Circuit, all held that if the TPA has the discretion of determining under what circumstances it can collect fees, that's a fiduciary act. And that's clearly what happened with regard to these overpayments. So we think here it's clear that Blue Cross had the discretion to decide the benefit, to decide whether to recover it, and that's the fundamental part of the plan. And that should be viewed as being a fiduciary act, and we certainly plausibly allege that, Your Honors. Thank you very much, counsel, and all counsel. Good afternoon. If you're excused, let's call the next case.